IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LYNN FAAS, ) | |
| ) | |
| Plaintiff ) | No. 05 C 5299 |
| ) | |
| v. ) | The Honorable William J. Hibbler |
| ) | |
| SEARS, ROEBUCK AND CO, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND ORDER

Lynn Faas worked for Sears, Roebuck and Company for nearly thirty years, and when Sears fired her in 2004, she sued Sears. Faas alleges that Sears' new management team entered with a goal to sweep away many of the older managers, and that Sears terminated her because of her age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* Sears moves for summary judgment.

I. Factual Background

At the outset, counsel for both parties are to be commended in their compilation of 56.1 materials and in their briefs. Counsel have avoided the temptation to quibble with factual minutiae and trade rhetoric that seems to be endemic in this overly litigious climate, but that serves only to raise litigation costs, delay adjudication, and obscure the relative merits of the case. Counsel have reserved their argument and dispute for items truly worthy of argument and dispute, and to that end, both have vigorously (and skillfully) advocated on behalf of their respective clients.

1

Faas, who was born in September 1954, began working for Sears in 1974, working her way through Sears' chain of command until she became a Store General Manager (SGM) in Sheboygan, Wisconsin in 1993. (Def. 56.1(a) St. ¶¶ 1-2). After 1993, Faas received further promotions as she became the SGM for larger stores, ultimately settling at the Fox Valley Mall store in Aurora, Illinois in April 2000. (Def. St. ¶¶4).

In November 2002, Robert Poss, the District General Manager (DGM) for Sears' Chicago South District, placed Faas on a Performance Plan for Improvement (PPI). (Def. St. ¶ 15-16). The PPI critiqued Faas's ability to provide leadership for her associates and in particular for her Assistant Store Managers (ASM) and also her organizational skills. (Def. St. ¶ 16). The deficiencies noted by Poss in the November 2002 PPI caused a failure to meet Sears' Ready All Day (RAD) standards, a decline in customer service scores, and a failure of merchandise to flow to the sales floor in a timely manner. (Def. St. ¶ 16).

Faas provided an action plan to respond to the deficiencies noted in the PPI. (Def. St. ¶ 18). In February 2003, Poss noted that there had been some progress in meeting those deficiencies, but that Faas's progress had been inconsistent. (Def. St. ¶ 19). By March 2003, Poss noted improvement in some areas, but also that customer satisfaction scores remained unsatisfactory, and that Faas would remain on the PPI. (Def. St. ¶ 21). In May 2003, Poss again noted improvement in some areas, but criticized Faas's customer satisfaction scores and her ability to train her ASM of Apparel. (Def. St. ¶ 23). By July 2003, Poss took Faas off the PPI, noting that the problem had been corrected, but mandating continued improvement in several areas. (Def. St. ¶ 24). Poss also completed a mid-year review for Faas in July 2003 where he gave her a 2 out of 5 in Results and 3 out of 5 in Leadership Principles. (Def. St. ¶ 25).

In November 2003, Wendy Carges replaced Poss as the DGM for the Chicago South District. (Def. St. ¶ 30). At the time Carges assumed her position, the Chicago South District was the second-worst performing district among the 63 Sears' districts in the United States. (Def. St. ¶ 32). As an initial step in boosting the performance of Sears' Chicago South District stores, Carges assessed the performance of the 12 SGMs in the Chicago South District and had concerns about all but two of them. (Def. St. ¶¶ 33-34). The two SGMs about whom Carges had no concerns were both older than Faas. (Def. St. ¶ 34).

Carges believed that Faas's performance as the Fox Valley Mall Store's SGM was unacceptable. (Def. St. ¶ 36). Carges noted that Faas did not manage the 2003 holiday season well, that Faas's Balanced Scorecard (BSC) scores for customer service, selling of product maintenance agreements, and credit applications to be unacceptably low, some of the same problems noted by Poss in 2003. (Def. St. ¶ 36). At year end, Faas's BSC score was 2.0 out of a possible 5. (Def. St. ¶ 36).

In January 2004, Carges spoke to Faas regarding her performance. Carges told Faas that because of her leadership skills and performance, Carges would place her on a PPI and that Faas should consider "any and all options." (Faas Dep. at 144; Carges Dep. at 95). A few weeks later, Carges allegedly told Faas that she was not suited for Sears' "current matrix." (Faas Dep. at 147). Again, Carges told Faas to consider her options, perhaps by considering managing a smaller store that specializes in women's apparel or by exploring other potential positions at Sears' corporate offices. (Faas Dep. at 147-49; Carges Dep. at 93-97, 113-19).

At the end of February, Carges reviewed Faas's performance and rated her as a 2 out of 5 in both Results and Leadership. (Def. St. ¶ 41). Carges did compliment Faas on her handling of a

3

remodeling of the Fox Valley Mall Sears store and also that Faas understood Sears' new "Store Owns Sales" (SOS) expectations where other SGMs did not understand those expectations. (Pl. 56.1(b)(3)(B) St. ¶ 17; Def. St. ¶ 42).

In March 2004, two of the in-store managers that Faas supervised complained to Carges about the way Faas had treated them during a meeting. (Def. St. ¶ 43). Carges again suggested that Faas consider options other than submitting to a PPI because of the personnel conflicts among those employees that Faas supervised. (Def. St. ¶ 43). Faas informed Carges via e-mail that she was not interested in other positions at Sears and believed that she could improve her store if placed on a PPI. (Def. St. ¶ 44).

By May 2004, Carges believed that Faas's performance had not sufficiently improved and so placed her on a PPI. (Def. St. ¶ 45). At the time, Faas's BSC score was 1.9 out of 5.0, and her Customer Satisfaction was a 1.0. (Def. St. ¶ 45). Carges listed several concerns on the PPI, including Faas's ability to coach her assistant managers, Faas's customer satisfaction ratings, and Faas's ability to manage a store of the size and complexity of the Fox Valley Mall store. (Def. St. ¶ 46).

In June 2004, Carges met with Faas, complimenting her on improved customer satisfaction scores and product agreement performance, but cautioning Faas to be more involved in developing her team than in involving herself in the day-to-day details of the store. (Def. St. ¶ 47). Faas's performance did not noticeably improve in July and August, and in August Carges and Donna Deselits (Sears's Human Resources Director for full-line stores in the North Central Region) met with Faas. (Def. St. ¶¶ 48-49). On August 13, 20004, Carges gave Faas a memo, informing her that her BSC scores to date were "completely unacceptable," criticizing her leadership skills and ability

4

to develop her employees' skills, and noting that her customer satisfaction remained one of the poorest in the nation. (Def. St. ¶ 49). Carges warned Faas that only 30 days remained in the PPI process and that if Faas did not correct the deficiencies noted the next step in the process would be termination. (Def. St. ¶ 50).

Faas turned 50 in September 2004, and went on vacation to celebrate. (Def. St. ¶ 51; Pl. St. ¶ 30). Unfortunately, the merchandise and signage for the fall setup had not arrived by the time Faas was scheduled to leave for her vacation. (Pl. St. ¶ 31). Because of the late arrival of the material for the fall setup, Faas left instructions with her in-store marketing manager and two other assistant managers regarding the fall setup. (Pl. St. ¶ 31; Def. St. ¶ 52). Faas also left her subordinates with her cell phone number in case any problems arose. (Pl. St. ¶ 31). In addition, Chicago Cubs catcher Michael Barrett was to sign autographs during Faas's scheduled vacation. (Def. St. ¶ 52; Pl. St. ¶ 32). Faas left instructions with the aforementioned assistants and also with her loss prevention manager, Sue Peterson, to manage the Barrett signing. (Pl. St. ¶ 32).

According to Carges, she visited the store on September 8, and discovered that the store intended to route the line for autographs into the parking lot (so that those waiting in line would not be able to see, and be tempted by, Sears' merchandise) and that the fall setup was inadequate. (Carges Dep. 144-45; Def. St. ¶ 54).[1] Carges e-mailed Faas, informing her of the problems with the

---

[1] Faas disputes much of Carges's testimony. However, there are two problems with Faas's dispute. First, she relies solely on her deposition testimony in which she relays what the loss prevention manager "told" her. Faas's testimony about someone else's out-of-court declaration is hearsay, and thus not competent evidence for summary judgment purposes. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir.1997). Second, even if Faas's evidence were competent, nothing in it rebuts Carges's impression of the fall setup. Instead, it speaks only to the Barrett signing. Consequently, the Court strikes Paragraph 33 of Faas's 56.1 Statement and deems Paragraph 54 of Sears' Statement to be admitted.

fall setup and letting her know that the assistant managers whom Faas had left in charge seemed "overwhelmed and frustrated." (Def. St. ¶ 56). Carges decided to terminate Faas as a result of the problems with the fall setup and the Barrett signing. (Def. St. ¶ 57). Carges discussed her decision with Deselits, who later informed Steve Sunderland, Sears' Regional Vice President for the North Central Region. (Def. St. ¶ 58). Both Deselits and Sunderland approved of Carges's decision. (Def. St. ¶ 58). Carges terminated Faas on September 13, 2004. (Def. St. ¶ 59).

Faas's allegations of discrimination revolve around Sears' Leadership Overview and Talent Management Process, some missing documents, and what she believes to be a pattern of disparate treatment.

Sears utilized a Leadership Overview and Talent Management Process to help predict its associates' potential for advancement in the company. (Pl. St. ¶ 2). Sears asked its managers to evaluate immediate subordinates promotability and to classify them as having "high potential," "promotable," "solid performer," "blocker," or "above capacity." (Pl. St. Ex. G; Pl. St. ¶ 6). A "blocker" was an associate who performed satisfactorily, but whom management did not perceive as being able to move beyond her current assignment, and who might be limiting the development of another associate by remaining in that position. (Carges Dep. at 55-56; Sunderland Dep. at 48). According to Carges, one strategy Sears used was to motivate blockers to think about alternate positions. (Carges Dep. at 56).

Sears did not, however, share these reviews with the associate being reviewed, though an associate could request her file. (Pl. St. ¶ 4; Deselits Dep. at 35). Deselits testified that one reason Sears kept the reviews confidential was to protect information that "should only be used by . . . someone making an employment decision based on promotability," such as age or salary. (Deselits

6

Dep. at 34). Sears required managers to indicate an associate's age, gender, and race on the first page of the review. (Pl. St. Ex. G)

Faas also points to the experiences of other SGMs. Dave Johnson and John Spencer served, respectively, as the SGMs of the State Street and Orland Park stores when Carges became the DGM for the Chicago South District. (Pl. St. Exs. N-O). Both were in their fifties at the time, and Carges placed both on PPIs shortly after assuming her position. (Pl. St. Exs. N-O). Both Johnson and Spencer state that Carges provided them little feedback on how they should improve their store and that she instead repeatedly suggested that they retire rather than endure the PPI process. (Pl. St. Exs. N-O). Further, Spencer stated that Carges threatened to terminate him. (Pl. St. Ex. O). Further, neither Johnson's nor Spencer's employment files contain their PPIs. (Pl. St. ¶¶ 19-20). Two other SGMs over the age of fifty (Michael Mast and Will Reed) retired in January 2004, and their personnel files contain no records of their performance. (Pl. St. Exs. R-S).

Meanwhile, SGMs under the age of fifty, with one exception, did not receive PPIs. Scott Kratz, who was 45 when Carges began her employment. (Def. St. ¶ 35(a)). Kratz had been with Sears for only a few months, and had been the SGM at the Chicago Ridge Store for an even shorter time. (Def. St. ¶ 35(a)). Yet, Kratz's BSC score dropped from 2.7 at the end of 2003 to 1.7 at the end of 2004. (Pl. St. Ex. U). Carges testified she placed Kratz on a PPI, and that he successfully completed it, but Kratz's personnel file does not contain the PPI. (Carges Dep. at 177-78). Thirty-One year-old Sahlih As-Salaam's BSC score dropped from 2.9 to 2.6 in 2004, but Carges never placed him on a PPI. (Pl. St. ¶ 25). Thirty-Nine Year Old Gerald McGowan's 2004 BSC score was 2.5, but Carges never placed him on a PPI. (Pl. St. ¶ 26). Thirty-Five year-old Cheri Leonard's BSC score was 2.3, Carges never placed her on a PPI. (Pl. St. ¶ 27). Forty-One year-old Judy

7

Spivey had a 2.2 2004 year-end BSC score, but Carges never placed her on a PPI. (Pl. St. ¶ 28). And Steven Ross, 41, had a 2.6 2004 year-end BSC score without receiving a PPI from Carges. (Pl. St. ¶ 29).

Finally, Faas points out that Deselits shredded the Leadership Overviews and Talent Management Reviews. (Pl. St. ¶ 40). According to Deselits, she shredded the documents when the next yearly review was to take place, in part to maintain confidential and private information. (Deselits Dep. at 28-32).

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The opposing party must then "go beyond the pleadings" and "designate specific facts showing that there is a genuine [material] issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir.1996).

## III. Analysis

The ADEA prohibits an employer from discharging an employee because of her age, 29 U.S.C. § 623(a)(1), and an employee seeking to prove an employer discriminated against her can proceed under the direct or indirect method of proof. *Hemsworth v. Quotesmith.Com*, 476 F.3d 487, 490 (7th Cir. 2007). Under the direct method, a plaintiff must come forward with direct evidence

demonstrating that the employer terminated her because of her age or circumstantial evidence from which a jury could infer the employee's age motivated the decision. *Id.* The indirect method also involves circumstantial evidence, but employs circumstantial evidence that conforms to the prescription of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L.Ed. 2d 668 (1973). *Id.* at 490-91; *Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1052 (7th Cir. 2006). Faas argues she has produced sufficient evidence to proceed under either method of proof.

Faas rests her argument under the direct method on a single comment made by Deselits during her deposition and on Deselits's decision to shred the Leadership Overviews and Talent Management Reviews. Under Faas's theory, Deselits testified that Sears used age as a confidential factor in assessing promotability and because it did so, Deselits shredded the Leadership Overviews and Talent Management Reviews. Because Deselits shredded the Leadership Overviews, Faas urges the Court to draw an inference that the documents contained information that demonstrated that Sears discriminated against older employees. According to Faas, Deselits's testimony and her act of shredding the Leadership Overviews therefore points directly to a discriminatory reason for her termination.

A multitude of problems render Faas's theory untenable. First, discriminatory animus by a non decisionmaker is relevant only if a plaintiff produces evidence from which a jury could infer that the discriminatory animus influenced the decisionmaker. *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1063 (7th Cir. 2003). Here, it is undisputed that Carges, not Deselits, made the decision to terminate Faas. Faas points to no evidence to demonstrate that Deselits shared any discriminatory animus she may have harbored with Carges.

Moreover, Deselits's comment simply is not related to the decision to terminate Faas. A particular remark can provide sufficient proof of discrimination under the direct method only if linked to the adverse employment action in question. *Merillat v. Metal Spinners, Inc.*, 470 F3d 685, 694 (7th Cir. 2006); *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006). Deselits spoke about "age" during her deposition in the context of explaining the Leadership Overviews, a tool used by Sears to determine promotability. Faas does not claim to have been unfairly passed over for promotion, and so again, the fact that Sears may have improperly used the documents to make promotion decisions does not point directly to a discriminatory motive for its act in this case. Faas also argues that Sears' use of the term "blocker" evidences an intent to discriminate because of an employee's age. The term "blocker"as used by Sears, however, is age-neutral. A "blocker" could be an employee of any age — one that simply had reached her potential and stood in the way of perhaps more promising employees. Accordingly, the Leadership Overviews simply are not relevant to the decision in this case.

Finally, much of Carges's theory concerning the missing Leadership Overviews centers on the incorrect belief that Sears shredded the documents in violation of federal regulations. The regulations, however, require employers to retain documents for a period of one year from the date of the personnel action to which they relate. 29 C.F.R. 1627.3(b)(1)(ii). Sears complied with the regulation for two independent reasons: (1) it took no "personnel action" based on the Leadership Overviews -- no one at Sears (at least among the similarly situated employees pointed to by Faas) was promoted or fired based on the Leadership Overviews; (2) Sears retained the Leadership Overviews for one year, until the next years assessments were made. Deselits's routine procedure

of shredding the documents does not point to a discriminatory animus and the Court declines Faas's invitation to draw any adverse influences from the destruction of those documents.

Faas points to no circumstantial evidence sufficient for a jury to draw an inference of discrimination, and her claim cannot survive summary judgment based on the direct method of proof.

Under the indirect method, Faas must demonstrate that she was a member of the protected class, was meeting her employer's legitimate expectations, suffered an adverse employment action, and that the employer treated more favorably similarly situated individuals outside the protected class. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006). If Faas's evidence is sufficient for a fact finder to find a *prima facie* case of discrimination, the burden shifts to Sears to rebut her claim of discrimination by pointing to a legitimate, non-discriminatory reason for its action. *Id.* If Sears can do so, Faas must then show this reason to be pretextual. *Id.* The Seventh Circuit has held that where a plaintiff argues that an employer applies its legitimate expectations in a disparate manner, the second and fourth prongs of the *prima facie* case merge and an inquiry into pretext is necessary. *Keri v. Board of Trustees of Purdue Univ.*, 458 F.3d 620, 644 (7th Cir. 2006); *Cerutti*, 349 F.3d at 1064 n. 8; *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002); *see also Hague v. Thomson Distribution Co.*, 436 F.3d 816, 823 (7th Cir. 2006) (commenting that the reason the 'legitimate expectations' prong merges with the pretext inquiry is because the question is the same: is the employer lying about its legitimate expectations).

Here Faas argues that Carges applied Sears's expectations in a disparate manner, placing her and two others in the protected class on PPIs while placing none of the employees outside the protected class on PPIs. Carges had concerns about ten of the twelve SGMs in her district. The Court notes, however, that the two employees about whom Carges had no concerns both were older

than Faas, undermining Faas's argument that Carges targeted only older SGMs. Carges did place three SGMs on PPIs in 2004. All three, including Faas, were older than fifty years old or turned fifty during the PPI process. Five of the seven SGMs who escaped the PPI process were nine or more years younger than Faas. Scott Kratz, who was 46 during the time Faas went through the PPI process, received his own PPI the following year (2005), when he was 47. Audrey Hall is the only manager about whom Carges had concerns and who was older than 50 who did not receive a PPI. In other words, five substantially younger managers — all of whom Carges believed to be underperforming did not receive PPIs. And four managers who were 47 or older did receive PPIs.

Carges, however, supplied an explanation for her decision to issue only three PPIs in 2004 and one in 2005. Carges explained that it was not tenable for her to navigate more than a handful of SGMs through the PPI process at one time. (Def. St. ¶ 38). Accordingly, Carges prioritized which SGMs most needed improvement. (Carges Dep. at 166-168). Carges decided that those SGMs who had less experience (both as SGMs and at their respective stores) needed more time to develop in their positions prior to undergoing the PPI process. (Carges Dep. at 166-67, 183-84). As-Salaam, Ross, McGowan, Leonard, and Spivey (all more than nine years younger than Faas) had served as SGM of their respective stores for less than a year. (Def. St. ¶ 35, Pl. St. Ex. U). Moreover Faas, Spencer, Johnson, and Kratz had the lowest BSC scores of the ten SGMs about whom Carges had concerns. (Def. St. ¶ 48; Pl. St. Ex. U). In other words, Sears provided a legitimate, non-discriminatory reason for Carges's decision to place Faas, and not the other SGMs, on a PPI.

Faas fires a couple of bullets at Carges's explanation in an effort to demonstrate that it is a lie, something she must do to demonstrate that Carges's explanation is pretextual. *Hague*, 436 F.3d at 824. First, Faas argues that Carges failed to follow Sears's internal policy regarding the issuance

12

of a PPI. Faas argues that Sears' PPI Process Manual instructs managers to "treat similar performance situations among associates in a consistent manner," and therefore her explanation of why she placed Faas, and not the other SGMs, on a PPI must be a lie.[2] At most, Faas's evidence suggests that Carges mistakenly applied the PPI process, not that she lied about her reasons for selecting certain SGMs for that process. *Walker v. Mueller Indus., Inc.*, 408 F.3d 328, 333 (7th Cir. 2005); *Jordan v. Summers*, 205 F.3d 337, 344 (7th Cir. 2000). Further, the section of the manual quoted by Faas refers to the timing of follow-up steps to the PPI. (See Pl. Ex. L at D 15538). Nothing in the manual explicitly states that it is improper for a manager to consider an SGMs level of experience before placing an SGM on a PPI.

Faas also suggests that timing of her PPI is suspicious, demonstrating that Carges lied about her reasons for placing her on it. According to Faas, Carges encouraged her to leave voluntarily in January 2004 and told her that she was not a good manager for Sears' current matrix. Faas also argues that Sunderland pushed Carges to terminate her several months later. This sequence of events, however, only suggests that Sears had concerns about Faas's performance and that it took its time evaluating Faas's performance. The undisputed facts further undermine Faas's claim that the timing of her termination is suspicious. Faas does not dispute that Carges informed her in January 2004 that she was considering placing her on a PPI. Further, Faas's BSC score was 2.0 at 2003 year-end, and it declined throughout 2004, culminating in a disappointing fall set-up that Faas had delegated to her assistant managers. Carges merely gave Faas a window of opportunity to

---

[2] Faas also points to Carges's testimony regarding Sunderland's directive to implement the PPI process as evidence, arguing that Sunderland instructed her to place anyone who was not meeting expectations on a PPI. Faas, however, does not accurately report Carges's testimony. Carges testified that Sunderland gave her latitude to decide when the PPI process should begin and time to solidify her evaluations of the SGMs. (Carges Dep. at 61-62).

improve before implementing the PPI plan. The timing of her termination therefore is not even remotely suspicious.

Faas's remaining two arguments simply lack support in the record. Faas claims that Sears represented to the EEOC that it had hired Allan Thellefson (age 62) to replace her, but instead hired Jan Berlin (age 46), and that this lie demonstrates Sears' reasons for placing her on a PPI and later terminating her must have been pretextual. Faas points only to Exhibit AA in support of this statement of fact. Exhibit AA purports to be a list of managers hired by Sears between 2003 and 2005, and Thellefson's name is never mentioned. Nor does Exhibit AA contain any reference to any EEOC documents. Faas also argues that Sears lied about the Barrett-signing incident, pointing to the statements of Sue Peterson. Even if Faas's argument were sufficient to demonstrate Sears's reasons for terminating her were pretextual (which it is not), it is based upon hearsay. Faas does not offer Peterson's deposition testimony or her affidavit. Instead, Faas relies on what Peterson "told" her, which is classic hearsay, and of course, not admissible to stave off summary judgment. *Eisenstadt*, 113 F.3d at 742.

In the end, Sears has come forward with a legitimate, non-discriminatory reason for its decision to place a few of its underperforming SGMs (and Faas in particular) on PPIs and Faas has pointed to no evidence in the record to demonstrate that this reason was pretextual. Faas had the lowest BSC scores of any SGM in Carges's district, and despite having several months to improve upon them, her scores actually declined. The Court GRANTS Sears' motion for summary judgment.

IT IS SO ORDERED.

_6/20/07_

Dated

_[signature]_

Hon. William J. Hibbler
United States District Court

14